**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| **LINDA JEAN QUIGG, Ed.D**, | |
| Plaintiff, | |
| v. | Civil Action No. 7:12-CV-153 (HL) |
| **THOMAS COUNTY SCHOOL DISTRICT, SCOTT MORGAN, Individually, and MARK NeSMITH, Individually**, | |
| Defendants. | |

**ORDER**

This case is before the Court on the Renewed Motion for Summary Judgment filed by Defendants Scott Morgan and Mark NeSmith.  (Doc. 112). After reviewing the pleadings, affidavits, depositions, and other evidentiary materials presented, the Court grants Defendants' motion.

**I.    FACTUAL BACKGROUND**

This case arises from the vote by the Thomas County Board of Education ("School Board") on February 8, 2011 not to renew the contract of Linda Quigg ("Plaintiff") as the superintendent for the Thomas County School District ("School District").

**A.    Plaintiff's Tenure as Superintendent**

Plaintiff served as the Assistant Superintendent of the School District from 1998 to 2007.  (Doc. 70, ¶ 31).   In 2007, she was appointed to the

Superintendent position.  (Id. at ¶ 32).   The School Board appoints superintendents through term contracts, which are subject to renewal.  O.C.G.A. § 20-2-101.  The School Board consists of seven members, and a majority vote is required to renew a superintendent's contract.  (O.C.G.A. § 20-2-52.1; Doc. 57-4, ¶ 6).  In appointing Plaintiff, the School Board granted her a three-year contract.  (Doc. 67, pp. 18–19).  Then, in 2008, the School Board extended her contract by one year, providing for an expiration date in mid-2011.  (Id. at pp. 20–21).

**B.    The Board of Education's Vote Not to Renew Plaintiff's Contract**

As Plaintiff's contract neared its mid-2011 expiration, the School Board agreed to meet for a renewal vote on February 8, 2011.  (Doc. 70, ¶ 42).  Prior to this meeting, School Board members Morgan and NeSmith spoke with Plaintiff and encouraged her to reorganize her administration to provide for an assistant superintendent position.  (Doc. 85, ¶ 67).  Morgan and NeSmith explained that Plaintiff needed a tough "hatchet man" to address school policy implementation— a "guy" she could send to individual schools to "handle" things.  (Id. at ¶¶ 73–74). Morgan and NeSmith recommended a specific male employee for the position, but Plaintiff suggested a female employee.  (Id. at ¶¶ 69, 80).  In response, Morgan inquired: "We have no males in the school system?"  (Id. at ¶ 90). During another conversation on the same topic, Morgan asked Quigg, "[W]hat about a guy for this position? . . . I'm just being honest about that, you know, a guy will, and I was just thinking from the standpoint of an offset."  (Id. at ¶ 85).

2

Despite these comments, Morgan eventually ended up naming a female employee as a possible candidate for the position.  (Doc. 57-4, p. 5).  In a conversation with a School District parent regarding the renewal vote, NeSmith explained that "[I]t is time to put a man in there," referring to the administration. (Doc. 85, ¶ 110).

At the February 2011 renewal vote meeting, Plaintiff rejected Morgan and NeSmith's proposal to add an assistant superintendent position.  (Doc. 70 ¶ 158). Instead, she proposed a plan providing for various "directors" to oversee different aspects of her administration.  (Id.).  The School Board then voted five-to-two against renewing Plaintiff's contract.    (Doc. 28, ¶ 4).  School Board members Street, Evans, NeSmith, Morgan, and Hiers voted against renewal.  (Id.).  After the vote, Hiers told a School District employee that she voted against Plaintiff's renewal because Plaintiff "needed a male to work under her to handle problems, someone that could get tough with these people (employees) that are causing problems."  (Doc. 67-2, p. 35).

## C.    Developments After the Nonrenewal Vote

Plaintiff immediately believed the vote was tainted by discriminatory bias. (Doc. 67-1, pp. 15–16).  The day following the vote, Plaintiff contacted attorney Jerry Lumley to discuss her concern that the vote was the product of discrimination.  (Id. at p. 16).  Plaintiff asked for Mr. Lumley's help in transcribing the audio tapes of her meetings with Morgan and NeSmith.  (Doc. 68, p. 143). Within the month following the vote, Plaintiff also met with attorneys Lee Parks

3

and William Tinkler, Jr. to discuss her possible discrimination claims. (Id. at pp. 143–144).

### D.    Procedural Background

Plaintiff filed a complaint on August 3, 2011 with the Equal Employment Opportunity Commission (EEOC) against the School District, alleging sex discrimination and retaliation. (Doc. 67-2, pp. 39–46). Thereafter, Plaintiff filed her Title VII and 42 U.S.C. § 1983 discrimination and retaliation claims in this Court. (Doc. 1, Doc. 28). Plaintiff did not sue Morgan and NeSmith in her original Complaint. (Doc. 1, ¶¶ 55–62). When Plaintiff became aware that § 1983 was another possible avenue for relief (Doc. 116, p. 24), Plaintiff filed a Motion for Leave to File Amended Complaint (Doc. 19) and a Motion to Add Parties (Doc. 20), naming Defendants Morgan and NeSmith. These motions were filed on February 8, 2013 and granted on April 9, 2013. (Doc. 33). On September 9, 2014, this Court granted summary judgment in favor of all Defendants, and the case was dismissed. (Doc. 100). On appeal, the Eleventh Circuit Court of Appeals concluded that the Court erred in granting summary judgment on Plaintiff's claims against the School District, Morgan, and NeSmith. (Doc. 108).

Defendants Morgan and NeSmith have now filed a Renewed Motion for Summary Judgment (Doc. 112), raising arguments from their initial motion that were not addressed by the Court in its Order granting summary judgment.

Specifically, Morgan and NeSmith argue that Plaintiff's claims against them are barred by the applicable statute of limitations.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Investor Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court must view all of the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (citations omitted).

5

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. <u>Id.</u> at 325. Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact does exist. <u>Anderson</u>, 477 U.S. at 257.

## III.   ANALYSIS

### A.   Statute of Limitations

The statute of limitations for a § 1983 gender discrimination claim is two years. <u>Lovett v. Ray</u>, 327 F.3d 1181, 1182 (11th Cir. 2008) (explaining that Georgia's statute of limitations for personal injury actions, and, hence, the statute of limitations for a § 1983 claim arising out of events occurring in Georgia, is two years). The limitations period begins to run when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." <u>Id.</u> When the alleged gender discrimination occurs in the employment context, the statute of limitations "begins to run at the time the relevant employment decision is made, not at the time that the consequences of that decision are realized." <u>Nance v. Maxwell Federal Credit Union</u>, 186 F.3d 1338, 1341 (11th Cir. 1999). However, the employee

must first receive "unequivocal notice of the adverse employment decision."[1] Grayson v. K Mart Corp., 76 F.3d 1086, 1100 (11th Cir. 1996). The decision not to renew an employee's contract constitutes an "adverse employment action," sufficient to commence the running of the statute of limitations.  Dickey v. Crawford County School Dist., 928 F.Supp.2d 1342, 1355 n.86 (M.D. Ga. 2013) (citing Johnson v. Bibb County Bd. of Educ., Case No. 5:07–CV–425 (CDL), 2009 WL 1885052, at *7 (M.D. Ga. June 29, 2009) and Siler v. Hancock County, 510 F.Supp.2d 1362, 1372–73 (M.D. Ga. 2007)).

In this case, the School Board voted not to renew Plaintiff's contract on February 8, 2011.  Plaintiff was present at that meeting and knew of the decision before the meeting concluded.  Plaintiff argues that the School Board's decision not to renew her contract was not an adverse employment action because it did not equate to a final decision to terminate Plaintiff.  The Court disagrees.  The law is clear that non-renewal of a superintendent's employment contract constitutes an adverse employment action, particularly when the superintendent is informed of the decision not to renew and "the School Board neither offered nor mentioned any renewal and/or extension of [the superintendent's] contract." Dickey, 928 F.Supp.2d at 1348.  Because Plaintiff was aware of the School Board's decision not to renew her contract on the day that it was made, and

---

[1] In a prior Order (Doc. 35), the Court stated that Plaintiff received notice of the adverse action on June 1, 2011.  However, a review of the evidence produced during discovery convinces the Court that Plaintiff had unequivocal notice that her contract would not be renewed on the day the School Board voted in favor of nonrenewal.

because there was no mention of the possibility of a future extension or renewal of the contract, the statute of limitations for Plaintiff's discrimination action began to run on February 8, 2011.

### B.   Defenses to the Statute of Limitations

#### 1.   "Commencement" of the Action

Plaintiff did not seek to add Defendants Morgan and NeSmith until February 8, 2013—the second anniversary of the School Board's decision not to renew her contract.  Plaintiff's motions seeking to add these defendants were not granted until April 3, 2013.  It is Plaintiff's position that the filing of the Amended Complaint as an attachment to her Motion to Amend (Doc. 19-1) on February 8, 2013 constituted "commencement" of the claims against NeSmith and Morgan, thus satisfying the two-year statute of limitations.  This argument is unavailing. Georgia law is clear that an amended complaint is not deemed filed until the court grants the motion to amend.  Bollinger v. State Farm Mut. Auto. Ins. Co., 538 Fed. Appx. 857, 863 (11th Cir. 2013); see also Gladstein v. Aurora Loan Services, LLC, No. 1:11–CV–02784, 2013 WL 637040, at *3 (N.D. Ga. Jan. 18, 2013); Williams v. Clinch County, Georgia, 231 F.R.D. 700, 702 (M.D. Ga. 2005). Accordingly, Plaintiff's Amended Complaint, adding Defendants Morgan and NeSmith, was deemed filed on April 3, 2013, after the expiration of the statute of limitations.

2.     Tolling

The question of whether a statute of limitations period is tolled in a § 1983 action is governed by state law.  Thomas v. Lee, 298 Fed. Appx. 906, 908 (11th Cir. 2008) ("For § 1983 claims, we borrow not only the state's statute of limitations, but also its body of tolling rules unless it is inconsistent with the federal policy underlying the claim.").  As discussed above, federal courts in Georgia have repeatedly held that an amended complaint is not deemed "filed" until the court has granted a motion to amend.  The statute of limitations is not tolled by the pendency of a motion to amend; rather, it is the "duty of counsel to obtain a timely ruling on the motion to add defendants."  Heng v. Donald, No. 7:08–CV–5, 2011 WL 925726, at *8 (M.D. Ga. Jan. 25, 2011) (citing Doyle Dickerson Tile Co. v. King, 436 S.E.2d 63, 65 (Ga. Ct. App. 1993)).

Plaintiff argues that Georgia's tolling laws are inconsistent with the purposes underlying § 1983 and should not be applied.  (Doc. 116, pp. 17–18).  Specifically, Plaintiff argues that, "[a]ny state law rule to the effect that a plaintiff's filing of an amended pleading bringing in new parties within the limitations period in a §1983 action, where the amended pleading is not formally approved by the trial court until after the expiration of the limitations period, plainly undermines the compensation and deterrence purposes animating §1983."  (Doc. 116, p. 18).

The United States Supreme Court, in Board of Regents v. Tominio, held that statutes of limitation do not violate § 1983's policies of deterrence, compensation and uniformity, noting that "a state statute [of limitations] cannot be

considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation."  446 U.S. 478, 487–88 (1979).  The Supreme Court identified two of the principal policies embodied in § 1983 as deterrence and compensation, and held that neither of these policies is significantly affected by enforcement of statutes of limitations because plaintiffs can still enforce their claims if they file within the limitations period.  Id. at 488.  The same rationale applies to Georgia's tolling provisions.  The Court concludes that Georgia's tolling provisions do not undermine the policies behind § 1983, and accordingly, apply to the facts of this case.

Even if Georgia's tolling laws are applicable, Plaintiff contends that equitable tolling applies under the circumstances and that the statute of limitations did not begin to run in this case until Plaintiff "knew of facts sufficient to make out a prima facie case of discrimination."  (Doc. 116, p. 19).  Equitable tolling of a limitations period is appropriate when the movant untimely files because of extraordinary circumstances that are both beyond his or her control and unavoidable even with due diligence.  Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999).  However, equitable tolling is appropriate in the employment context only when the facts show that the employee had no reason to believe that she was the victim of unlawful discrimination.  See Stewart v. Booker T. Washington Ins., 232 F.3d 844, 852 (11th Cir. 2000).  Here, Plaintiff immediately suspected that the non-renewal vote was tainted by bias and sought

out the advice of an attorney the day following the vote.  See, supra, p. 4.  Thus,

equitable tolling is inappropriate under the circumstances presented.

>        3.      Relation Back

Plaintiff also argues that the filing of her Amended Complaint "related

back" to the filing of her original Complaint, pursuant to Rule 15(c) of the Federal

Rules of Civil Procedure.  (Doc. 116, p. 22).  Under Rule 15(c), claims "relate

back" if:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by the amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Here, Plaintiff argues that the claims asserted in her Amended Complaint

relate back to the filing of her original Complaint because they arose out of the

same facts, satisfying subsection (B), and because Defendants Morgan and

NeSmith had actual or constructive knowledge of the initial complaint within 120

days of its filing, satisfying subsection (C).   Neither of these arguments is sufficient to satisfy the relation back provisions laid out in Rule 15(c).  Subsection (B) does not apply because Plaintiff's Amended Complaint adds new parties, rather than solely new claims.   Because the Amended Complaint adds new parties, the requirements of subsection (C) must be met for these claims to relate back to the date of the filing of the original Complaint.

Plaintiff argues that the requirements of subsection (C) are satisfied because "the individual defendants 'should have known that but for a mistake concerning the identity of the proper party, the suit would have been brought against them.'"  (Doc. 18, p. 23).   Plaintiff explains that a mistake was made concerning the identity of the parties because there was a "misconception that the only vehicle for securing relief was Title VII."  (Doc. 18, p. 24).  The Motion to Amend was filed after Plaintiff's attorney realized that "relief may in fact be awarded against individuals under § 1983."  (Doc. 18, p. 24).  This is not the kind of "mistake" that falls within the bounds of Rule 15(c).  Plaintiff knew the identities of Morgan and NeSmith, but did not file suit against these individuals because her attorney was not aware of their potential liability under § 1983.   As the Eleventh Circuit explained in <u>Powers v. Graff</u>, "[E]ven the most liberal interpretation of 'mistake' cannot include a deliberate decision not to sue a party whose identity plaintiff knew from the outset."  148 F.3d 1223, 1227 (11th Cir. 1998) (internal quotation omitted).   Plaintiff's Amended Complaint, adding Defendants Morgan and NeSmith as parties in this lawsuit, does not relate back

12

to the filing of the original Complaint.  The addition of these defendants to this lawsuit was outside of the applicable statute of limitations.

### 4.      Failure to Raise Arguments on Appeal

Plaintiff argues that Defendants Morgan and NeSmith failed to raise the statute of limitations defense on appeal to the Eleventh Circuit, even though the Court of Appeals "would plainly have been authorized to rule on [the statute of limitations issue] based on the 'right for any reason' doctrine."  (Doc. 116, p. 24). Because Morgan and NeSmith "were undeniably free to raise [the statute of limitations issue] on appeal," Plaintiff urges the Court to hold that Defendants waived their statute of limitations argument.  As far as the Court can tell, no court has ever held that such a waiver occurs when a party, out of an abundance of caution, fails to raise all possible grounds for a judgment on appeal—even those not addressed by the trial court.  The Court declines to issue such a holding today.

### 5.      Potential to Delay Trial

Plaintiff also argues that the Court should deny Defendants' Motion because it "potentially threatens the trial date set by the Court."  (Doc. 116, p. 25).  This argument is moot in light of the Court's finding that Plaintiff failed to file suit against Defendants Morgan and NeSmith prior to the expiration of the statute of limitations.

## IV.    CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by

Defendants Morgan and NeSmith (Doc. 112) is granted.

**SO ORDERED**, this the 15th day of June, 2016.

*/s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

les